UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS MILLER,

                Plaintiff,

v.

DIANE TRAMSKI, *et al*,

                Defendants.

_____/

Case No. 07-13126

Avern Cohn
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**AMENDED REPORT AND RECOMMENDATION**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 27)**

## I.    PROCEDURAL HISTORY

Plaintiff filed a complaint on July 26, 2007, alleging violations of his

constitutional rights committed by Diane Tramski, "John Doe," a Port Huron

police officer, Peter Deegan, the state judge who was responsible for his criminal

case, "Jane Doe," the prosecutor who handled his state criminal case, and Patricia

Caruso, the director of the Michigan Department of Corrections.  (Dkt. 1).  On

August 7, 2007, District Judge Avern Cohn dismissed the complaint as to "John

Doe," "Jane Doe," and Patricia Caruso and directed plaintiff to file what was, in

essence, an amended complaint within sixty days.  (Dkt. 4).  On September 5,

2007, plaintiff filed the present complaint.  (Dkt. 5).  The matter was initially

referred to Magistrate Judge Virginia M. Morgan for all pretrial procedures, pursuant to 28 U.S.C. § 636(b)(1)(B), on that same date.  (Dkt. 6).  All three defendants filed their answers on January 4, 2008.  (Dkt. 16).[1]  On January 14, 2008, the case was reassigned to the undersigned.  (Dkt. 19).  Plaintiff filed a reply to defendants' answer on January 15, 2008.  (Dkt. 20).  The present motion for summary judgment was filed on July 14, 2008.  (Dkt. 27).  Plaintiff's response was filed on August 12, 2008.  (Dkt. 29).

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

## II.    STATEMENT OF FACTS

### A.    Background

During the evening of  September 24, 2002, a person later identified as plaintiff was observed by two plain-clothes Port Huron police officers speaking with a woman at the entrance to her residence.  (Dkt. 27, Ex. A, p. 6). The officers, Sgt. Diane Tramski and Officer Tom Ruedisueli, were in the area for other reasons

---

[1]  Plaintiff's *pro se* complaint named the two individual defendants and the "Port Huron Police Department" as defendants.  (Dkt. 1, p. 4).  The answer was filed on behalf of the two individual defendants and the City of Port Huron, rather than the Port Huron Police Department.  It would appear that the defendant City of Port Huron has taken the position that it is the real party in interest and plaintiff has not objected.

but they noticed what they believed was an argument taking place between the plaintiff and the woman.  (Dkt. 27, Ex. A, p. 7).  They approached the entrance to the residence, they claim out of concern for what might escalate into a more serious situation, and identified themselves as police officers.  (Dkt. 27, Ex. A, p. 8, 11).  The officers asked plaintiff for his name and he answered.  They then asked for some identification and plaintiff attempted to leave, apparently taking the only route away from the scene, which was "through" the two officers, resulting in physical contact with the officers.  (Dkt. 27, Ex. A, pp. 8-11).  Officer Ruedisueli attempted to prevent plaintiff from leaving after which plaintiff, who had been drinking, grabbed Officer Ruedisueli by the shirt.  A struggle ensued and in the struggle plaintiff struck Sgt. Tramski in the face.  (Dkt. 27, Ex. A, p. 13).

Officer Ruedisueli then employed a "straight arm bar take down," which resulted in plaintiff being brought to the ground where he was placed in handcuffs. (Dkt. 22, Ex. N).  Plaintiff was taken to the Port Huron Police Department for processing and later taken to the St. Clair County Jail.  It was determined that he was on parole and he was "lodged" at the jail on the parole violation and "released" on the assault charge.  *Id.*  On October 29, 2002, a complaint was filed charging plaintiff with the felony charge of resisting/obstructing a police officer. He was arraigned on that complaint on November 19, 2002, with a preliminary

Report and Recommendation
Defendants' Motion for Summary Judgment
*Miller v. Tramski*; 07-13126

examination being held on December 3, 2002.  An information was filed in circuit court charging plaintiff with felony resisting/obstructing and he was arraigned on that charge in circuit court on January 6, 2003.  (Dkt. 27, p. 2, Ex. C).  During this time period, plaintiff was in custody relating to the parole violation.  *Id*.

The trial on the felony resisting/obstructing charge was held on March 4, 2003.  *Id*.  Plaintiff waived a jury and agreed to a bench trial.  The trial judge found plaintiff guilty of a misdemeanor assault charge and acquitted him of the felony resisting and obstructing charge.  The trial judge found that the "striking" of Sgt. Tramski took place before the arrest and concluded that the facts of this case make it an assault and battery" rather than the "felony obstructing."  (Dkt. 27, Ex. A, p. 142).  Plaintiff was sentenced the same day to a sentence of 93 days incarceration with 162 days credit for time already served.  (Dkt. 27, Ex. C).

Plaintiff appealed the conviction for the misdemeanor assault and battery conviction.  The Michigan Court of Appeals reversed plaintiff's conviction based on procedural errors committed by the trial judge.  In reaching its decision, the Court of Appeals stated that plaintiff's arrest for the felony offense had been proper and "based on the [trial] court's own factual findings defendant is guilty of violating the statute."  However, the Court of Appeals determined that the trial court has misinterpreted the statute "regarding the importance of the timing of

[plaintiff's] arrest in relation to the battery." *People v. Miller*, 2004 WL 1857369, n. 2 (Mich. App. 2004) (Dkt. 27, Ex. B). The reversal of the conviction was based on the determination that the trial court had found plaintiff guilty of a "cognate" lesser included offense rather than a "necessarily" lesser included offense which, the Court of Appeals concluded, was prohibited by state court authority.

B.   Plaintiff's Complaint

Plaintiff's *pro se* amended complaint generally describes his version of the events of September 24, 2002,[2] alleging that the police officers used "excessive force," that they assaulted him, and that they unlawfully arrested him. He requested "compensatory and punitive damages" based on claims that he was "unlawfully arrested, assaulted, 4, 5, and 14th amendment rights violated, malicious prosecution, and abuse of legal process by the two Port Huron police officers." Plaintiff said he was "suing Port Huron Police Department [and] the two police officers." (Dkt. 1, p. 4). The complaint also includes a chronology of

_____

[2] Plaintiff's complaint alleges that the events in question took place on September 26, 2002. All of the other records relating to this case suggest that these events took place on September 24, 2002, and, therefore, September 24, 2002, will be considered the critical date and the erroneous date referenced in the complaint will be considered a simple error.

Report and Recommendation
Defendants' Motion for Summary Judgment
*Miller v. Tramski*; 07-13126

the events following his arrest on September 26, 2002, ending with his release on parole on June 3, 2004. *Id*.

Using an "indulgent" standard of review for plaintiff's complaint, it is construed that plaintiff has asserted the following claims against the individual defendants: (1) false arrest in violation of the Fourth Amendment and actionable under 42 U.S.C. § 1983; (2) excessive force in violation of the Fourth Amendment and actionable under § 1983; (3) malicious prosecution in violation of the Constitution and actionable under § 1983; (4) abuse of process in violation of the Constitution and actionable under § 1983; and (5) various state law tort claims. Plaintiff also states a claim against the City of Port Huron for violating his rights under the Fourteenth Amendment which is actionable under § 1983.

C.   Defendant's Motion and Plaintiff's Response

Defendants' present motion contends that most of the various federal and state claims that plaintiff has made are barred by the applicable statute of limitations, but if they are not so barred, they should be dismissed based on immunity or because plaintiff has not stated a proper cause of action even if all the facts are viewed in the light most favorable to plaintiff.

Plaintiff's response to the motion identifies his claims as (1) false arrest, (2) false imprisonment, (3) assault, (4) malicious prosecution, (5) abuse of legal

process, and (6) unspecified violations of the Fourth, Fifth and Fourteenth

Amendments to the United States Constitution.  (Dkt. 29, p. 3).  Plaintiff also

takes the position that the statute of limitation for all of his claims runs from the

reversal of his conviction which he acknowledges took place on August 19, 2004.

## III.   LEGAL STANDARDS

### A.   Summary Judgment Standard

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law."  Fed.R.Civ.P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476, 478-

79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary

judgment:

> The moving party bears the initial burden of establishing
> an absence of evidence to support the nonmoving party's
> case.  Once the moving party has met its burden of
> production, the non-moving party cannot rest on its
> pleadings, but must present significant probative
> evidence in support of the complaint to defeat the motion
> for summary judgment.  The mere existence of a scintilla
> of evidence to support plaintiff's position will be
> insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994). *See Tolliver v. Federal Republic of Nigeria*, 265 F.Supp.2d 873, 879 (W.D. Mich. 2003). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Id*., quoting, *Sperle v. Michigan Dept. of*

*Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

B.   Statute of Limitations

The statute of limitations for claims made under § 1983 is the general personal injury statute of limitations for the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007).  While the statute of limitations is determined by state law, the date on which the claim accrues is determined by federal law.  *Id.*

C.   Qualified Immunity

Defendants assert that the federal claims raised by plaintiff are barred by the doctrine of qualified immunity.  Qualified immunity shields government officials from personal liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006) The question of qualified immunity is a legal question for the court to resolve.  *Tucker v. City of Richmond*, 388 F.3d 216, 219 (6th Cir. 2004).  In order to determine if qualified immunity applies to a particular situation, the court should apply a two-part test:  (1) considering the allegations in a light most favorable to the plaintiff, was a constitutional right violated and, (2) was that constitutional right clearly

established.  *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).  A premise of the doctrine of qualified immunity is that the law is willing to accept reasonable mistakes made by public officials except those that are "plainly incompetent or those who knowingly violate the law."  *Id.*

Once the defense of qualified immunity is raised, plaintiff has the burden of demonstrating that the defendant is not entitled to qualified immunity.  *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006).  That burden includes the obligation to show that the right is clearly established.  *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004).  A defendant, on the other hand, has the burden to show that the challenged conduct was objectively reasonable in light of the law existing at the time of the events.  *Tucker*, 388 F.3d at 220.  While the facts are normally taken as alleged by the plaintiff, facts that absolutely contradict the record will not be considered as claimed by plaintiff.  *Marvin v. City of Taylor*, 509 F.3d 234, 249 (6th Cir. 2007).

**IV.   ANALYSIS AND CONCLUSIONS**

   A.   Federal Claims

The federal claims, as opposed to those that are actionable solely under state law, would be those properly brought pursuant to 42 U.S.C. § 1983.  In order to state a proper claim under § 1983, a plaintiff would have to establish that a person

acting under color of state law deprived him of a right secured by the Constitution or laws of the United States. *Smoak*, 460 F.3d at 777. Section 1983 creates a "species of tort liability" the limits of which are established by the "common law of torts." *Heck v. Humphrey*, 512 U.S. 477, 483-84 (1994).

       1.    False Arrest/False Imprisonment

A claim of false imprisonment in violation of the Fourth Amendment is a proper claim arising under § 1983. False arrest is one form of false imprisonment and does not state a distinct cause of action from false imprisonment. *Wallace*, 549 U.S. at 388-89. "The sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process* ..." *Id.* A "false imprisonment claim ends once the victim becomes held *pursuant to* [legal process], for example, he is bound over by a magistrate or arraigned on charges." *Id.* "We hold that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 396.

Plaintiff's contention that the statute of limitations should begin to run when the conviction is reversed would require the court to find that the tolling period established in *Heck v. Humphrey, supra*, would apply to a false imprisonment

claim.  The Supreme Court specifically rejected such a contention in *Wallace*, 549
*U.S. at 393-95*.  Therefore, the statute of limitations for plaintiff's false
imprisonment claim under § 1983 began to run when he was detained pursuant to
legal process or arraigned.

In the present case, plaintiff was arrested on September 24, 2002, and,
according to the records submitted in this case, he was turned over to parole
authorities to deal with a violation of his parole, that same day.  The police report
indicates he was "released" regarding the assault matter at the same time he was
"lodged" in jail on the parole violation charge.  (Dkt. 22, Ex. N).  State district
court records indicate that a complaint was filed on October 29, 2002, charging
plaintiff with resisting and obstructing a police officer. Those records also indicate
that plaintiff's arraignment in state district court took place on November 19,
2002, and plaintiff asserts in an answer to an interrogatory that he was arraigned
on November 19, 2002.  (Dkt. 27, Ex. D).  The preliminary examination on that
charge took place on December 3, 2002, according to those records.  The circuit
court docket records indicate he was arraigned, following the preliminary
examination, on the felony information in circuit court on January 6, 2003.  (Dkt.
27, Ex. C).  A confusing factual circumstance in this case results from the apparent
fact that plaintiff was taken into custody by parole authorities on September 24,

2002, and was not released from their custody until June 3, 2004. (Dkt. 22, Unnumbered Ex. titled Verification of Incarceration).

Defendants, in their motion for summary judgment, suggest that the statute of limitations could not begin to run any later than the date of plaintiff's sentencing, March 4 or 5, 2003. (Dkt. 27, p. 6). However, the date that plaintiff appeared in court and was arraigned for the first time on the felony charges, November 19, 2002, is more consistent with when *Wallace* indicates the statute of limitations begins to run. In either case, however, more than three years (the general Michigan statute of limitations for personal injury claims) passed from those dates and plaintiff's false imprisonment claim would be time barred.

Defendants also suggest that plaintiff's false imprisonment claim is barred by the doctrine of qualified immunity. As indicated earlier, a court must consider two issues in deciding if qualified immunity applies to a particular situation. The court must determine if a constitutional right was violated and, if so, was that constitutional right clearly established. In the context of a false imprisonment claim, there is no constitutional violation if the arrest was based on probable cause. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). While the existence of probable cause is normally a question for the trier of fact, where there is only one reasonable view of the facts possible, the issue can be decided on a

Report and Recommendation
Defendants' Motion for Summary Judgment
*Miller v. Tramski*; 07-13126

motion for summary judgment.  *Id.*  An "arresting officer is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent."  *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008).

The relevant facts of the circumstances of plaintiff's arrest are largely uncontested.  The officers observed plaintiff at the entrance to a residence speaking with a female.  They could hear raised voices and became concerned about a possible domestic violence situation.  They approached plaintiff and asked for his name and identification.  They noticed that he had been drinking.  Plaintiff did give his name but did not provide any identification.  Rather, he tried to leave by walking "through" the officers which resulted in physical contact between at least one of the officers and plaintiff.  One of the officers attempted to restrain plaintiff after which plaintiff grabbed that officer's shirt and, in the following struggle, the other officer was struck in the face by plaintiff.  At that point plaintiff was subdued,  placed in handcuffs, and taken into custody.

While plaintiff does not contest the basic events, he contends that he was entitled to leave the presence of the officers and therefore the officers had no right to stop him from leaving.  Their attempts to stop him, he argues, amount to an

15

assault and battery on him.  The false premise of plaintiff's position is that he had

a right to leave.  Officers have a right to stop a person and make an inquiry if they

have a reasonable suspicion that criminal conduct has or will take place.  *United*

*States v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007).  As part of that right to make

such an inquiry, the officers have the right to detain the suspect for the purpose of

making a reasonable inquiry relating to the suspicious conduct.  *Id.*  In the present

circumstances, the officers had a reasonable suspicion that plaintiff was involved

in or about to be involved in criminal conduct (domestic violence) and therefore

had a right to question plaintiff about that issue and to detain him while the

inquiry is being made.  Plaintiff's attempt to push or force his way by the officers

for the purpose of leaving, as acknowledged by plaintiff,  justified their response

of attempting to restrain him.  The striking in the face of one of the officers by

plaintiff provided probable cause that plaintiff was resisting, obstructing or

assaulting the officers in violation of state law.  The state court judge who

conducted the preliminary examination of plaintiff's case apparently found

probable cause that he committed the offense, the trial judge found there was

probable cause for the charged offense (although the trial judge later acquitted

plaintiff of the offense which is not completely inconsistent with the existence of

probable cause) and the state Court of Appeals observed that, based on the

findings of the trial judge, the plaintiff had actually committed the offense he had been charged with in spite of the erroneous finding of the trial judge. Additionally, an independent review of the record by this court strongly indicates that defendants had probable cause to arrest plaintiff for resisting and obstructing a police officer. This finding results in a determination that there was no constitutional violation with respect to plaintiff's arrest and therefore defendants Tramski and Ruedisueli are protected from suit by the doctrine of qualified immunity.

2.     Excessive Force

The Fourth Amendment prohibits the use of excessive force by an arresting officer. *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005). A claim for excessive force in violation of the Fourth Amendment is actionable under § 1983. A claim for excessive force in effectuating an arrest under § 1983 accrues at the time of arrest. *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). As with the claim of false imprisonment, the *Heck* tolling does not apply here because an excessive force claim does not necessarily call into question the validity of a criminal conviction. *Id.* at 234.

Therefore, plaintiff's excessive force claim accrued on September 24, 2002, and the three year limitation period expired long before plaintiff filed his

complaint in July of 2007. Plaintiff's excessive force claim is not timely and should be dismissed for that reason.

Defendants also assert that the individual defendants are protected by the doctrine of qualified immunity. In assessing the merits of whether there was a constitutional violation, a court must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The constitutionality of an officer's actions must be evaluated from "the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id.*

The appropriate inquiry is whether the officer's actions are objectively reasonable in light of the facts and circumstances of the arrest, including "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The analysis "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary." *Smoak*, 460 F.3d at 783.

"In considering a claim for qualified immunity, courts must first address the threshold question of whether, taken in the light most favorable to the party

asserting the injury, the alleged facts show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a violation could be made out taking the facts in the light most favorable to the plaintiff, then the next step is to determine whether the right was clearly established in a particularized sense, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fox*, 489 F.3d at 235 (internal citation and quotation marks omitted).

Very recently, and after the parties had submitted their pleadings in this case, the Supreme Court revisited their decision in *Saucier* and concluded that the mandatory order of the two-part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy. *Pearson v. Callahan*, — U.S. —, 2009 WL 128768 (2009). While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test. In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the

constitutional right claimed by plaintiff was not clearly established where lower

court case law was consistent with the conduct of the officers and "principles of

qualified immunity [should] shield an officer from personal liability when an

officer reasonably believes that his or her conduct complies with the law."  While

the factors remain the same, the order in which they are considered is not critical

and the failure to satisfy the requirements of either factor would defeat plaintiff's

claim.

While there are some differences between the plaintiff's and defendants'

versions of the relevant events, the basic facts described are quite similar.  The

testimony by Officer Ruedisueli at plaintiff's criminal trial, in relevant part, is as

follows:

> A    Um, myself and Sergeant Tramski were going there to do some
> follow-up investigation. ... I observed a black male subject
> standing at the door, speaking with the resident.  We had
> spoken to her earlier, so I could tell that that was the resident,
> Jennifer, standing in the door.  I could – I didn't know what
> was happening, so I rolled my window down and listened.
>                                     * * *
> A    It was progressively getting more heated.  She was trying to
> close the door and she was stepping – standing in the doorway
> with the screen door open, then she'd close the screen door,
> and she was trying to close the interior door, but for some
> reason it – she didn't close the screen door ... they just kept
> arguing –or he was yelling at her.  I, I couldn't hear anything
> she was saying.
>                                     * * *

A       That's when we were approaching.  Sergeant Tramski was parked on the, the west facing east on Riverview, and we were basically facing each other and we got out of our vehicles and approached on foot.

* * *

A       Um, I approached him, asked him if he had any identification on him, and he stated yes.  And it seemed at that point that he was going to cooperate, but suddenly he became agitated and wanted to leave right away.

Q       And then what happened.

A       Um, he tried to push past me.  He was like walking forward instead of going around me, he wanted to walk through me.  And put his shoulder into me.  I put my hand on his chest and pushed him back and told him he needed to get back.  And not to touch me.  And I told him that he wasn't free to go at that point.  And he was insistent on leaving and he grabbed me and pushed me back by the left shoulder.  He grabbed ahold of my shirt.  Pushed me back.  And at that point Sergeant Tramski was just on the other side of him and I heard her say that he hit her in the mouth and that he was under arrest, and I, I had ahold of his right, I had ahold of his right arm and just spun him down to the ground and put his arms behind his back.

* * *

Q       When you initially approached the defendant to have contact with him, did you notice any, any odor about him or anything about him?

A       He had a strong odor of alcohol on his breath.

* * *

A       We handcuffed him and he just laid there on the ground until the patrol car got there, and he wasn't happy.  He just said a number of foul words and we waited for the patrol car to get there.

(Dkt. 27, Ex. A, pp. 6-10).

Report and Recommendation
Defendants' Motion for Summary Judgment
*Miller v. Tramski*; 07-13126

Sergeant Tramski testified at the trial as well.  Her testimony, in relevant part, is as follows:

A    We didn't know, you know, if he was meaning to harm this woman or get inside the house or what his intentions were at that time.  He was acting disorderly in our opinion, and we just didn't want it to get any worse.  We really had other intentions of being there.

\* \* \*

A    We both approached him.  You know, we kind of came from different directions because of where we parked, but we came in together on the sidewalk and, and Officer Ruedisueli first identified himself, he was probably just a couple of feet ahead of me, he illuminated his badge.  I did – I had by badge on my belt and I took my flashlight and illuminated by badge and identified myself.

\* \* \*

A    His, his conversation mostly took place with Officer Ruedisueli, and then Officer Ruedisueli asked him for identification.  And, you know, he didn't want to give it or if he, or if he had it and didn't want to give it ...

\* \* \*

Q    And what specifically did the Defendant do in trying to push past Officer Ruedisueli?

A    Well, he, he just was walking right towards him, more towards him than myself at that time.

Q    And what happened at that point?

A    Officer Ruelisueli put his hand up and, and, and was trying to get him back and, and I believe told him to get back.  And when he stepped back a little bit, then he approached again, and that's when he – I did not see him grab Officer Ruedisueli because I was on the other side, that's when he threw his hand up and that's when he hit me in the mouth.

Report and Recommendation
Defendants' Motion for Summary Judgment
*Miller v. Tramski*; 07-13126

(Dkt. 27, Ex. A, pp. 11-13).

Plaintiff's testimony from the trial included the following:

A    They asked – first, first of all, to be honest, they asked me my
     name.  They said what's my name, and I told them my name,

                              * * *

Q    You said to them your name; is that correct?

A    Yeah

Q    And is it correct that they asked you for identification? Yes or
     no?

A    Yes.

Q    And after they asked you for identification, was it at that point
     that you tried to walk away?

A    Yes

                              * * *

A    Yeah, but they wasn't standing right side by side when I tried
     to go between them, they said – they stepped close together and
     tried to grab me when I walk through, impeding my step when I
     tried to walk through.

                              * * *

A    They grabbed me.

Q    And is it your testimony also that you don't recall specifically
     hitting Sergeant Tramski?

A    I didn't – I don't recall hitting her because she – dude pushed
     me, dude pushed me.

Q    Is it possible you hit her?

A      He threw me on the ground, he threw me on the ground.  I
        never resisted or anything.  When they – when he got ahold of
        me, I never resisted.  I never resisted after that.  He pushed me.
        When I tried, when I tried to walk away he pushed me back.
        And they grabbed my arm.  And I was like – I didn't even say –
        I didn't have time to say anything.  I had time to say – do
        nothing.  And they threw me on the ground.  That's exactly
        what happened.  It happened just, just that (snapped finger).

(Dkt. 27, Ex. A, pp. 16-18).

Viewing these facts in the light most favorable to the plaintiff, as required

under these circumstances, the officers approached plaintiff under circumstances

that gave them a reasonable suspicion that a domestic dispute was either taking

place or about to take place.  Plaintiff was speaking in a raised voice and had been

drinking.  The officers began to make a routine inquiry into the suspected conduct

and plaintiff attempted to leave without the permission of the officers and before

their inquiry had been completed.  In his attempt to leave, he made physical

contact with the officers which resulted in a struggle between plaintiff and the

officers.  The officers were faced with an uncooperative, combative, and possibly

intoxicated person who they had reason to believe might have been involved in a

domestic incident with the potential for violence.  The mixture of alcohol and

flaring emotions associated with domestic turmoil commonly involve violence.

Officer Ruedisueli quickly and reasonably reacted to the circumstances by taking

plaintiff to the ground and placing handcuffs on him.  An officer making an

investigatory stop has "the right to use some degree of physical coercion or threat

thereof to effect it."  *Graham v. Connor*, 490 U.S. 386, 395-96 (1989).   Plaintiff

does not allege any additional action by either officer such as striking, the use of

mace or anything other than a measured response designed to immobilize a

suspect in what could have potentially been a violent situation.   It is not clear

exactly what role Sergeant Tramski played in taking plaintiff to the ground or in

placing handcuffs on plaintiff.  The facts of the present case are similar in relevant

ways to those of *Fox, supra* (subject who was uncooperative reached towards area

where firearm located while being questioned by officer about disorderly event

was taken to the ground and handcuffed found not to have been subjected to

excessive force).   Under the totality of the circumstances, the conduct of the

officers was objectively reasonable and therefore the conduct does not involve

"excessive" force in a Constitutional sense.  *Kostrzewa v. City of Troy*, 247 F.3d

633, 639 (6th Cir. 2001).  Having determined that defendant's conduct does not

amount to "excessive" force, defendants are entitled to qualified immunity with

respect to plaintiff's excessive force claim.

        3.      Malicious Prosecution

Plaintiff asserts a malicious prosecution claim against the individual defendants in this case which he alleges is a constitutional violation and actionable under § 1983.  (Dkt. 5, p. 4; Dkt. 29, p. 6).  While Sixth Circuit and Supreme Court authority, as noted later in these comments, do not clearly define a § 1983 claim for malicious prosecution, if there is an actionable claim of that nature it would not be barred by the statute of limitations.  A claim of the nature of malicious prosecution would necessarily call into question the validity of the underlying criminal conviction and therefore, as determined by *Heck*, the limitation period applicable to such claims would be tolled until the criminal conviction was invalidated.  *Heck*, 512 U.S. at 484.  In this case, plaintiff's criminal conviction was reversed by the Michigan Court of Appeals on August 19, 2004, and, therefore, this claim raised as part of the complaint filed on July 26, 2007, would be timely.

While plaintiff's § 1983 malicious prosecution claim may have been timely filed there are a number of problems associated with such a claim for plaintiff. The Supreme Court, in *Wallace*, 549 U.S. at 390, n. 2, noted that it has "never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983 ... and do not do so here."  This Circuit, in *Darrah v. City of Oak Park*, 255 F.3d 301, 308-13 (6th Cir. 2001), discussed the confusing state of the law with

Report and Recommendation
Defendants' Motion for Summary Judgment
*Miller v. Tramski*; 07-13126

respect to a § 1983 malicious prosecution claim under the Fourth Amendment.  In

its discussion, the Court noted any claim of that nature would not be defined by

the tort law in a particular state but found that at the very least, such a claim would

require proof that there was no probable cause for an arrest and prosecution.  *Id*. at

311-12.  Four years later the Sixth Circuit again considered a § 1983 malicious

prosecution claim and, again, noted the uncertainty regarding such a claim.

*McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005).  The *McKinley*

court also stated that while the elements of a § 1983 malicious prosecution case

had not been defined, a finding of probable cause would mean that a "§ 1983

action for malicious prosecution will not lie." *Id*. at 445.

        The first problem for plaintiff with respect to this claim is that such a claim

must be brought against the person who made the decision to prosecute him. *Id*. at

444.  Plaintiff has not alleged that either of these defendants "conspired with,

influenced, or ... participated in" the decision of the prosecutor to bring these

charges.  Simply presenting evidence to a prosecutor does not subject an officer to

liability under a malicious prosecution theory. *Id*.

        The second problem for plaintiff is that probable cause existed to arrest him

for and charge him with the crime of resisting or obstructing a police officer.  One

basis for that conclusion is that on one or more occasions state courts found that

probable cause existed for that charge.  The doctrine of collateral estoppel would have a preclusive effect in this § 1983 litigation if a state court had made that finding.  While not all state law controls procedures associated with § 1983 claims, the state law of collateral estoppel is applied in federal court in determining the preclusive effect of a prior decision and, in Michigan, a probable cause finding in a preliminary hearing has preclusive effect where there is (1) identity of the parties, (2) there is a valid, final ruling in the first proceeding, (3) the same issue was actually litigated in the earlier proceeding, and (4) the party against whom the doctrine is asserted had a full opportunity to litigate the issue in the earlier proceeding.  *Darrah*, 255 F.3d at 311.  In the present case, following plaintiff's arrest, a preliminary examination was conducted and probable cause was found for the offense for which he had been charged, resisting and obstructing a police officer.  Barring allegations that the state court procedure was not valid, which have not been made here, the state court preliminary hearing would appear to satisfy all of the noted requirements and, therefore, collateral estoppel would prevent plaintiff from claiming a lack of probable cause here.  Additionally, in finding plaintiff guilty of the misdemeanor assault charge rather than the felony charge, the trial judge determined that probable cause existed to arrest plaintiff on

these charges.  (Dkt. 27, Ex. A, p. 20).  The Michigan Court of Appeals also found that probable cause existed for plaintiff's arrest.  (Dkt. 27, Ex. B, p. 1).

Independent of any state court ruling, the facts viewed in the light most favorable to the plaintiff demonstrate that probable cause existed for his arrest and prosecution.  Probable cause exists where the facts and circumstances would warrant a prudent person to believe that the person arrested had committed or was committing a crime.  *Darrah*, 255 F.3d at 312.  In this case, the facts testified to by plaintiff during his criminal trial, as pointed out earlier, demonstrate that he tried to force himself past and away from officers who had a reasonable suspicion that he was involved in criminal conduct and that, by itself, would warrant a prudent person to believe that he had assaulted, resisted or obstructed a police officer in violation of MCL 750.81d(1).  The existence of probable cause should result in the dismissal of any potential claim for malicious prosecution in violation of the Fourth Amendment brought under § 1983.

4.    Abuse of Process

Plaintiff asserts a § 1983 claim for abuse of process.  (Dkt. 5, p. 4; Dkt. 29, pp. 7, 10-12).  Neither the complaint nor the response to the motion for summary judgment distinguish, in any meaningful way, between plaintiff's claim for malicious prosecution and his claim for abuse of process on a factual or legal

basis. That is, plaintiff does not allege any facts that he claims constitute a factual

basis for an abuse of process complaint and he does not provide any legal

authority for such a claim that would reasonably allow for reasonable inferences to

be drawn as to a claim of this nature.[3]

Like a claim for malicious prosecution brought under § 1983, it is not clear

that there is a federally recognized § 1983 cause of action for abuse of process.

*Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 676-77 (2005); *Sutherland*

*v. Mizer*, 2008 WL 1995089 (E.D. Mich. 2008). Any cause of action arising under

§ 1983 should be defined by federal law rather than any particular state definition

of a comparable tort action. *Darrah*, 255 F.3d at 311-12; *see also Heck*, 512 U.S.

at 483-84 (the common law of torts, rather than the tort law of a particular state,

was the "starting point" for considering the "elements of damages and the

prerequisites for their recovery" in a claim under § 1983).

The common law, at least as interpreted by the Michigan Supreme Court,

reflects that a claim for abuse of process includes, at a minimum, proof of an

---

[3] Defendants appear to assert that plaintiff is claiming that the delay between his arrest and his arraignment on the charges is an abuse of process but that factual claim does not appear in the either the complaint or the response to the motion. Further, the claim does not appear in the exhibits attached to defendant's motion for summary judgment as suggested in defendants' brief. (Dkt. 27, p. 15).

element showing the "misuse of process for any purpose other than that which it was designed to accomplish," described by the court as an "ulterior purpose." *Friedman v. Dozorc*, 412 Mich. 1, 30 (1981); *Voyticky*, 412 F.3d at 676-77; *see also* Restatement Torts 2d, § 682 (abuse of process defined as the use of a legal process against another person "primarily to accomplish a purpose for which it is not designed").

In the present complaint, plaintiff has not alleged anything with respect to defendants' conduct that could be construed as involving an "ulterior purpose" in initiating criminal charges against him. In the absence of such an allegation plaintiff has not stated a cause of action under § 1983 for abuse of process, if such a cause of action exists. As a result, plaintiff's claim for abuse of process under § 1983 should be dismissed.

Additionally, in that the right to be free from an abuse of process is not "clearly established," the individual defendants would be entitled to the defense of qualified immunity and this claim should be dismissed against them. *Sutherland v. Mizer*, 2008 WL 1995089 (E.D. Mich. 2008).

5.    Municipal Defendant

Plaintiff has also alleged a cause of action against the City of Port Huron

under § 1983.  In the complaint plaintiff states that he is "suing [the] Port Huron Police Department" but does not provide any factual basis for such a claim against the Port Huron Police Department.  However, in his response to the motion for summary judgment plaintiff alleges that his cause of action with respect to the City of Port Huron is based on what he claims is the failure of the City to arraign him within seventy-two hours, contrary to state law, MCL 764.13.  (Dkt. 29, p. 13). Plaintiff does not allege that any delay in bringing him before a judge was pursuant to a policy but does acknowledge that "if" the delay was a result of a policy to not bring arrested individuals before a judge then the City could have violated the Constitution.  (Dkt. 29, p. 13).

Defendant City moves for the dismissal of plaintiff's complaint arguing (1) that plaintiff has not stated a § 1983 cause of action against the City, (2) that plaintiff was not "held" on the resisting or obstructing charge for forty-eight hours, (3) that no constitutional right of plaintiff was violated, and (4) that plaintiff has not identified a policy or practice of the City that caused a violation of plaintiff's rights that would give rise to a cause of action under § 1983.  (Dkt. 27, pp. 18-20).

The relevant facts associated with this claim are that plaintiff was arrested, without a warrant, on September 24, 2002.  He was on parole at the time for a prior conviction.  Following the arrest he was taken to the county jail and "lodged"

on a parole violation and "released" on the assault charge.  (Dkt. 22, Ex. N).

Plaintiff remained in the custody of the Michigan Department of Corrections as a

parole violator until June 3, 2004.  (Dkt. 22, unnumbered exhibit entitled

Verification of Incarceration).  The state court complaint charging plaintiff with

the felony charge was not filed until October 29, 2002, and he was arraigned on

that charge on November 19, 2002.  The preliminary examination was held on

December 3, 2002.

A municipal defendant can only be sued under § 1983 for their own

unconstitutional or illegal practices and may not be held liable for the

unconstitutional acts of their employees.  *Fox*, 489 F.3d at 238, citing, *Monell v.*

*Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  The municipal liability must be

based on the application of a custom, policy or practice.  *Monell*, 436 U.S. at 691.

In order to state a proper claim under § 1983, a plaintiff would have to establish

that a person acting under color of state law deprived him of right secured by the

Constitution or laws of the United States.  *Smoak*, 460 F.3d at 777.

Plaintiff's complaint against the City of Port Huron fails for more than one

reason.  The first reason is that plaintiff has not identified a custom, policy or

practice that resulted in the denial of a Constitutional right or a right provided by

federal law.  The second reason is that his claim appears to be based on an alleged

violation of state statute (MCL 764. 13 and 764.26); whereas a proper § 1983 claim must be based on a Constitutional or federal statutory right.  To the extent that plaintiff's claim can be construed as a claim arising under Constitutional standards set out in *Austin v. City of East Grand Rapids*, 685 F.Supp. 1396 (W.D. Mich. 1988), his claim fails for a third reason because *Austin* and the case on which it relies, *Gerstein v. Pugh*, 420 U.S. 103 (1975), are factually distinguishable from plaintiff's circumstances.  *Gerstein* dealt with a Florida statutory scheme that allowed felony prosecution for most crimes based on an information with no probable cause hearing before a judicial officer normally required.  The Supreme Court said such a practice violated the Constitution. *Austin* dealt with a practice followed by the City of East Grand Rapids to not provide for a prompt probable cause hearing when defendants were arrested on weekends.   In both *Gerstein* and *Austin*, the plaintiffs who were asserting claims were or had been held in custody in conjunction with, and solely based on, the charges on which they sought a prompt probable cause hearing.  In this case, plaintiff was held in custody based on a parole violation, a process he does not complain about here, and, therefore, he was not denied an arraignment or probable cause hearing following his arrest on September 24, 2002, because he was not being "held" on the resisting/obstructing charge after that time.

Based on these reasons, summary judgment should be granted in favor of the City of Port Huron.

B.    State Law Claims

In light of the recommendations above, the undersigned also suggests that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").  Thus, it is further recommended that plaintiff's state law claims be dismissed without prejudice.

V.    **RECOMMENDATION**

For the foregoing reasons, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d

Report and Recommendation
Defendants' Motion for Summary Judgment
*Miller v. Tramski*; 07-13126

505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 9, 2009

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

Report and Recommendation
Defendants' Motion for Summary Judgment
*Miller v. Tramski*; 07-13126

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>March 9, 2009</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Thomas A. Francis,</u> and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>Marcus Miller, # 205913, Mound Correctional Facility, 17601 Mound Road, Detroit, MI 48212</u>.

<u>s/Darlene Chubb</u>
Judicial Assistant